UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA SHEPPARD, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>COMPASS, INC., et al.,<br><br>    Defendants. | Case No. 22-cv-03237-TLT<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO CONFIRM ARBITRATION AWARD AND DENYING PLAINTIFFS' MOTION TO VACATE ARBITRATION AWARD**<br><br>Re: Dkt. Nos. 75, 80 |

A plaintiff seeking vacatur of an arbitration award carries a heavy burden. It is not enough to show a mistaken application of the law; it is not enough to show relevant evidence was excluded. For a court to vacate an arbitration award, the challenger must show that the award is "completely irrational or constitutes manifest disregard of the law." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009).

Pending before the Court are Defendants' motion to confirm the arbitration award. Defs.' Mot. to Confirm Arb., ECF No. 75, and Plaintiffs' motion to vacate the arbitration award. Pls.' Mot. to Confirm Arb., ECF No. 80. In its discretion, the Court finds this motion suitable for determination without oral argument. Civ. L.R. 7-1(b).

Having carefully considered the parties' briefs, the relevant legal authority, and for the reasons below, the Court GRANTS Defendants' motion to confirm the arbitration award and DENIES Plaintiffs' motion to vacate the arbitration award.

I.  **BACKGROUND**

Plaintiffs Lisa Sheppard and Todd Sheppard ("Plaintiffs" or "Sheppards"), a married couple, are both luxury real estate agents based primarily in Sonoma County, California. *See* FAC ¶ 33, Ex. A, ECF 1-1.

1   Compass, Inc. is a real estate brokerage and technology company based in New York.
2   ECF 75 at 3–4.  Compass California, Inc., Compass California II, Inc., and Compass California
3   III, Inc. are wholly owned subsidiaries of Compass, Inc (collectively, "Defendants").  *Id.*

4   In April 2018, the Sheppards joined Compass as independent real estate agents.  *Id.*  Each
5   signed an Independent Contractor Agreement ("ICA") with Defendants upon joining.  *Id.*  Lisa
6   Sheppard worked as an independent real estate agent for Compass until March 24, 2019.  *Id.*
7   Todd Sheppard remained with Compass until around June 3, 2020.  *Id.*

8   Plaintiffs allege that Defendants had lured them in from their own real estate business by
9   using "unfair, unlawful and fraudulent business practices that were designed to gain market share
10  by luring top real estate agents with promises of high commissions and compensation packages
11  that include bonuses, covered business expenses and stock options." FAC ¶¶ 1, 37.

12  They alleged Defendants failed to honor promises allegedly made during the recruitment
13  process, denied them commissions for listings they could have obtained, misrepresented to them
14  about Compass's stock option programs, and improperly sought repayment of incentives under
15  their ICA.  *Id.*

16  On April 29, 2021, Plaintiffs initiated this lawsuit in Sonoma County Superior Court
17  against Defendants bringing causes of action for (1) breach of contract, (2) fraud, (3) violations of
18  Labor Code §2802, (4) non-compliant wage statements, and (4) violations of California Business
19  & Professions Code §17200.  *See* Compl., Ex. C, ECF No. 1.  Defendants successfully removed
20  the case to this Court pursuant to 28 U.S.C. §§ 1332, 1367, 1441(a), 1446, and 1453, asserting
21  diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  *See* Notice of
22  Removal, ECF No. 1.

23  On June 30, 2022, Defendants moved to compel arbitration.  ECF 9.  The Court granted
24  Defendants' motion on February 27, 2023, and stayed the action pending arbitration.  ECF 42.

25  On April 18, 2023, Plaintiffs initiated arbitration with the American Arbitration
26  Association ("AAA"). ECF 75 at 4.  On October 14, 2024, Plaintiffs filed a motion to lift the stay
27  of arbitration and compel Defendants to pay their attorney's fees and costs.  ECF 55.  The Court
28  lifted the stay and provided a trial schedule but ordered the Parties to return to arbitration at the

United States District Court
Northern District of California

1    earliest date possible.  ECF 65, 66.  The Court denied Plaintiffs' request for attorney's fees and
2    costs.  *Id.*
3        At the final status conference held on April 28, 2025, Plaintiffs agreed to dismiss without
4    prejudice Compass California, Inc. and Compass California III, Inc. who had previously been
5    named as defendants in addition to the Defendants in this case—Compass, Inc. and Compass
6    California II, Inc.  *See* Final Arbitration Award ("Final Award"), Ex. 1, ECF 75-2.
7        The arbitration hearing took place from May 5-9, 2025.  ECF 75 at 5.  The parties
8    submitted post-hearing briefs on June 11, 2025, and reply briefing on June 20, 2025.  *Id.*
9        On July 2, 2025, an arbitrator appointed by AAA issued a final arbitration award in favor
10   of Defendants, finding Defendants not liable to Plaintiffs and determining that no damages were
11   warranted.  Final Award at 39.
12       On July 28, 2025, Defendants moved to confirm the Final Award, enter judgment in
13   Defendants' favor, and dismiss the case in its entirety.  ECF 75.  Plaintiffs filed an opposition to
14   Defendant's motion on August 11, 2025.  ECF 78.  Defendants filed a reply on August 18, 2025.
15   ECF 79.
16       On the same day, August 18, 2025, Plaintiffs filed a motion to vacate the arbitration award.
17   ECF 80.  Defendants filed an opposition to Plaintiffs' motion on September 2, 2025.  ECF 85.
18   Plaintiffs filed a reply on September 9, 2025.  ECF 87.
19       The parties do not disagree about these facts.  ECF 78 at 2.

## II.   LEGAL STANDARD

Review of an arbitral award is governed by the Federal Arbitration Act ("FAA"), and absent a statutory basis to vacate or modify, the Court "must grant" a motion to confirm. *Kyocera Corp. v. Prudential-Bache Trade Serv., Inc.*, 341 F.3d 987, 994 (9th Cir. 2003) (en banc).  If any party applies for an order confirming an arbitration award within one year after the award is made, "the court must grant such an order unless the award is vacated, modified, or corrected."  9 U.S.C § 9.  The Court may vacate the award in the following circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;

3

>   (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
>   (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
>   (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). "Section 10(a)'s limited grounds are 'designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures.' The burden of establishing grounds for vacating an arbitration award is on the party seeking it." *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010) (citations omitted).

"Review of an arbitration award is both limited and highly deferential and the arbitration award may be vacated only if it is completely irrational or constitutes manifest disregard of the law." *Comedy Club, Inc.,* 553 F.3d at 1288 (quotation marks and citation omitted). "'Manifest disregard of the law' means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010) (citation omitted). "To demonstrate manifest disregard [of the law] . . . [t]here must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it." *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009)

## III.   DISCUSSION

Plaintiffs argue that the Court should vacate the arbitration award because the Arbitrator (A) went outside the record and disregarded the parties' evidence regarding the term "equity;" (B) disregarded damages evidence of fraud; and (C) denied Plaintiffs the opportunity to examine Compass' founder. ECF 78 at 1–2. Defendants argue that Plaintiffs have not demonstrated the "exceptional circumstances" which give rise to vacatur under 9 U.S.C. § 10. ECF 79 at 2. This Court addresses each argument below.

4

**A.     The Arbitrator Did Not Exceed Her Authority in Defining "Equity"**

In supporting her conclusion that the term "equity" as referenced in each Plaintiff's ICA meant stock options, the Arbitrator cited to, *inter alia*, a financial information website *Investopedia*. Final Award at 25 n.7. Plaintiffs argue that expert witnesses on both sides presented undisputed evidence that "equity" to mean stock *and* stock options, and that the Arbitrator exceeded her authority by referencing a source outside the record. ECF 80 at 3. Defendants argue that the definition of "equity" was disputed, that the Arbitrator's finding was supported by evidence in the record, and that Plaintiffs point to no caselaw suggesting an arbitrator may not consult sources outside the record to supplement their findings. ECF 79 at 3; ECF 85 at 3.

"Arbitrators exceed their powers when they express a 'manifest disregard of law,' or when they issue an award that is 'completely irrational.'" *Bosack*, 586 F.3d at 1104(citation omitted). "[A]n arbitrator's failure to recognize undisputed, legally dispositive facts may properly be deemed a manifest disregard for the law." *Coutee v. Barington Capital Group, L.P*., 336 F.3d 1128, 1133 (9th Cir. 2003)

The parties' disagreement about the definition of the term "equity" arose from Plaintiffs claim they were entitled to stock ownership in Defendants' company—commensurate with their $38,000 investment in the company—in addition to stock options under the terms of their ICA. *Id.* at 7. Plaintiffs received no stock from Defendants which, Plaintiffs allege, renders the Final Award unjust. *Id.* Plaintiffs argue that there was "no testimony suggesting that 'equity' was something other than actual stock in the company." ECF 80 at 6. Plaintiffs further argue that the Arbitrator exceeded her power by relying on a definition of "equity" obtained from *Investopedia* in contradiction to "undisputed evidence." *Id.*

Plaintiffs overstate the Arbitrator's reliance on *Investopedia*. The Arbitrator's opinion explained that "[t]he Sheppards' contention that they were promised stock, not stock options, is contradicted by reams of evidence, including their own testimony." Final Award at 25. The Arbitrator goes on to summarize testimony that contradicts Plaintiffs' allegations, as well as "contemporaneous documents" that do so. *Id.* at 25–26. She calls attention to, for example, Ms.

5

Sheppard's reference to an expectation of stock valued at its "strike price," the testimony of Mr. Sheppard's sales manager, email correspondence between a Compass recruiter and Ms. Sheppard, and the language of the ICA itself to support her understanding of the term "equity." *Id.* The Arbitrator considered testimony and evidence in the record, then adopted a definition she deemed persuasive based on the credibility of the witnesses. The Arbitrator's reference to *Investopedia* in a footnote supplemented, not contradicted, the evidence already in the record that supported her conclusion. Plaintiffs cite no authority to suggest an Arbitrator may not consult resources outside the record in supplementing its definition of terms. ECF 78 at 4

While Plaintiffs are correct that this Court should "not confirm an arbitration award that is legally irreconcilable with the undisputed facts" *Coutee*, 336 F.3d. at 1133, whether Plaintiffs were entitled to stock, stock options, or both was a disputed fact. ECF 85 at 3. To the extent Plaintiffs are asking the Court to weigh the evidence in the record to determine whether the Arbitrator correctly defined "equity," this Court has "no authority to re-weigh the evidence." *Coutee*, 336 F.3d at 1134.

Finally, Plaintffs argue that the Arbitrator's conduct amounted to an independent investigation in excess of her authority under California Code of Civil Procedure § 1282.2(g). This statute requires that the arbitrator disclose to the parties any information obtained outside the record upon which the arbitrator intends to base his decision. *See* Cal. Code of Civ. Proc. § 1282.2(g) ("If a neutral arbitrator intends to base an award upon information not obtained at the hearing, he shall disclose the information to all parties to the arbitration and give the parties an opportunity to meet it."). However, merely showing that the Arbitrator relied on information outside the arbitration is not enough. Instead, the "party seeking to vacate the arbitration award" on these grounds "must show substantial prejudice." *Shaffer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 779 F. Supp. 2d 1085, 1089 (N.D. Cal. 2011). In *Shaffer*, this Court rejected a parties' contention that the arbitrators hiring two attorneys to do independent legal research on the issues at hand did not violate the statute. *Id.* at 1090. The *Shaffer* court also distinguished the facts before the court from the facts of *Canadian Indem. Co. v. Ohm*, 76 Cal. Rptr. 902 (Ct. App. 1969). In *Ohm*, the arbitrator visited the site of a fire at issue and consulted subcontractors to help

6

determine the amount of appropriate damages. *Id.* at 706. The California court found even this conduct did not substantially prejudice the parties. The Arbitrator's reference to *Investopedia* here does not rise to the level of independent investigation performed in *Shaffer* or *Ohm* where both courts found partial reliance on information obtained outside the record appropriate. *Shaffer*, 779 F. Supp. 2d at 1089–90.

Plaintiff has not demonstrated the Arbitrator's reference to *Investopedia* substantially prejudiced their likelihood of success. The record suggests the footnote had little impact given the Arbitrator's reliance on sources within the record. Final Award at 25–26. Accordingly, the Arbitrator did not exceed her authority in defining "equity."

### B. The Arbitrator's Fraud Findings Were Within Her Authority

The parties next focus their attention on the Arbitrator's findings regarding Plaintiffs' fraud claim. Plaintiffs argue that the Arbitrator "committed misconduct by finding fraudulent conduct on the part of Compass' recruiter but failing to award damages despite undisputed evidence of harm suffered by the Plaintiffs caused by Compass' fraud." ECF 80 at 8. Defendants argue that the Arbitrator properly declined to award Plaintiffs damages for fraudulent misrepresentation because the Arbitrator found Plaintiffs failed to prove damages for the claim. ECF 79 at 4.

The Court may not vacate an arbitration award solely based on a finding that the Arbitrator should have come to a different legal conclusion. *See Bosack*, 586 F.3d at 1102. ("Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award."). Indeed, to show the Arbitrator committed misconduct, Plaintiff must demonstrate that the Arbitrator "refuse[d] to hear evidence pertinent and material to the controversy." *Beard v. W. Colorado Motors*, LLC, No. 24-CV-00624-LB, 2024 WL 3364018, at *2 (N.D. Cal. July 9, 2024) (citation omitted).

The controversy at issue here is fraud. To prevail on a claim for fraudulent misrepresentation, a plaintiff must prove, by a preponderance of evidence, each of the elements: (1) misrepresentation; (2) knowledge of falsity; (3) intent to induce; (4) reliance; and (5) damages as a result of the misrepresentations. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). This

7

1  is the law the Arbitrator applied.  Final Award at 18.  Plaintiffs argue that the Arbitrator
2  committed misconduct because, despite finding that Defendants promise of "dedicated marketing
3  support. . . constituted a misrepresentation upon which the [Plaintiffs] relied," she awarded no
4  damages in disregard of "undisputed evidence showing [Plaintiffs] sought and received medical
5  treatment and counseling for the emotional harm caused by Defendants broken promises."  ECF
6  80 at 8.  Yet, Plaintiffs have not shown that the Arbitrator disregarded material evidence.  The
7  Arbitrator acknowledged that Plaintiffs "experienced substantial frustration from the lack of
8  dedicated marketing support," but she declined to award damages because Plaintiffs "failed to
9  adduce any evidence that they lost a listing or failed to sell a property because of the lack of
10 dedicated marketing support."  *See* Final Award at 24-25.

11  Under California law "[r]ecovery of emotional distress damage has been allowed, absent
12 impact or physical injury, in certain specialized classes of cases."  *Branch v. Homefed Bank*, 8 Cal.
13 Rptr. 2d 182, 186 (Ct. App. 1992).  One classes of cases include those in which the tortious
14 conduct causes "highly unusual as well as predictable emotional distress."  *Id.*  Another is where
15 emotional distress damages are the result of a breach of a fiduciary relationship.  *Id.*  A third is
16 where emotional distress damages result from the witnessing of an injury to a close relative.  *Id.*

17  The Arbitrator did not find Plaintiffs belonged to any of those classes.  *See generally* Final
18 Award.  The Arbitrator, instead, required Plaintffs to "prove that [Defendants'] misrepresentation
19 resulted in damage to them," finding the frustration Plaintiffs experienced to be insufficient.  *Id.* at
20 24.  The Arbitrator concluded that Plaintiffs failure to show lost business opportunities was "fatal
21 to their claim for fraudulent misrepresentation based on the misrepresentation of dedicated
22 marketing support."  *Id.*  The Arbitrator's finding that Plaintiffs did not sufficiently prove a claim
23 which entitled the Plaintiffs to damages for emotional harm was supported by California law.  *See*
24 Final Award at 24–25 (citing *Beckwith v. Dahl*, 141 Cal. Rptr. 3d 142, 163 (Ct. App. 2012) ("In an
25 action for [common law] fraud, damage is an essential element of the cause of action.'
26 'Misrepresentation, even maliciously committed, does not support a cause of action unless the
27 plaintiff suffered consequential damages" (citation omitted).

28  Plaintiffs have not demonstrated that the Arbitrator was confronted with evidence pertinent

8

and material to the controversy and refused to hear it. *Beard*, 2024 WL 3364018, at *2. Furthermore, the Court, again, notes that its standard of review is highly deferential. *Comedy Club, Inc.,* 553 F.3d at 1288; *see also Bosack*, 586 F.3d at 1102 (finding that courts are prohibited from accepting a party's "invitation to review the [arbitration panel's] factual findings and legal conclusions"). Even an incorrect application of the law would not warrant vacatur. *See United States v. Park Place Assocs., Ltd*., 563 F.3d 907, 920 (9th Cir. 2009) ("[A]rbitrators exceed their powers in this regard not when they merely interpret or apply the governing law incorrectly, but when the award is completely irrational, or exhibits a manifest disregard of law.") (citation omitted). Plaintiffs' allegation that the Arbitrator ignored evidence that Plaintiffs sought and received medical treatment and counseling for the emotional harm is not supported by the record. *See generally* Final Award. Plaintiffs' argument that the Arbitrator was required to award damages for finding a misrepresentation is not supported by the law. *Beckwith*, 141 Cal. Rptr. 3d at 163.

Accordingly, the Arbitrator did not commit misconduct for failing to award damages for Plaintiffs' emotional harm where she found Plaintiffs had failed to prove an underlying legal claim warranting such relief.

**C.    The Arbitrator Was Permitted to Exclude Mr. Reffkin's Testimony**

Finally, Plaintiffs argue that the Arbitrator exceeded her power and committed misconduct by denying Plaintiffs the opportunity to examine Defendants' CEO, Robert Reffkin, who Plaintiffs argue was a material witness with unique personal knowledge of Plaintiffs' complaints of fraud. ECF 80 at 9. Defendants argue that the exclusion was proper because Plaintiffs were not prejudiced by the absence of Mr. Reffkin's testimony. ECF 85 at 4–5.

The Arbitrator need not receive every piece of evidence offered by Plaintiffs and may exclude that evidence which would not "influence[] the outcome of the arbitration." *Emps. Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1490 (9th Cir. 1991). As discussed above, a finding of misconduct is chiefly warranted "when an arbitrator refuses to hear evidence pertinent and material to the controversy." *Beard*, 2024 WL 3364018, at *2. Accordingly, "a showing of prejudice is a prerequisite to relief based on an arbitration panel's

9

evidentiary rulings." *Emps. Ins. of Wausau,* 933 F.2d at 1490. Even if the Arbitrator "excluded evidence relevant" to Plaintiffs claim, Plaintiffs are not entitled to vacatur if there is a "lack of evidence of prejudicial impact." *Id.*

Here, the Arbitrator found that "Mr. Reffkin did not possess unique or superior information relevant to the case, nor did he possess information not available through any less intrusive means." Final Award at 15. She also found that Plaintiffs—as the recipients of Mr. Reffkin's communications—could themselves testify about their conversations for purposes of demonstrating their claims. *Id.* Furthermore, the Arbitrator permitted testimony of another witness, Mr. Jonas, to whom Mr. Reffkin had delegated the responsibility of corresponding with Plaintiffs regarding their complaints. *Id.* Given that information relevant to Mr. Reffkin's involvement in the conduct giving rise to Plaintiffs claims could enter the record through other avenues, exclusion of his testimony was not prejudicial. *Emps. Ins. of Wausau,* 933 F.2d at 1490.

The Arbitrator properly excluded the testimony of Mr. Reffkin because she found that his testimony would not influence the outcome of the arbitration. Final Award at 15; *See Emps. Ins. of Wausau,* 933 F.2d at 1490.

## IV.  CONCLUSION

"An arbitrator's decision must be upheld unless it is completely irrational, or it constitutes a manifest disregard of the law." *Schoenduve Corp. v. Lucent Techs., Inc*., 442 F.3d 727, 735 (9th Cir. 2006). Plaintiffs fall short of demonstrating that vacatur is required under 9 U.S.C. § 10(a).

For the reasons provided, the Court (1) **GRANTS** Defendant's motion to confirm the arbitration award, ECF 75, and (2) **DENIES** Plaintiff's counter-motion to vacate the arbitration award, ECF 80. The arbitration award is **CONFIRMED**.

By **September 30, 2025**, Defendants, Compass, Inc. and Compass California II, Inc., shall prepare and file a proposed form of judgment based on the terms as found by the Arbitrator. All future dates are vacated, except as modified herein. ECF 64.

//

1    After submission, the Court will approve or modify the language and provide it to the
2 Clerk of Court, who shall then enter Judgment in favor of Defendants, Compass, Inc. and
3 Compass California II, Inc., and close the case file.
4    This order resolves ECF 75 and 80.
5    IT IS SO ORDERED.
6 Dated: September 22, 2025

_____
TRINA L. THOMPSON
United States District Judge